IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY PRZYTULSKI, | ) | CASE NO.  1:11-cv-1518 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Jeffrey Przytulski ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying his application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I.  PROCEDURAL HISTORY**

On July 27, 2007, Plaintiff filed an application for a POD and DIB and alleged a

disability onset date of January 21, 2004. (Tr. 12.) The application was denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 12.) On February 25, 2012, an ALJ held Plaintiff's hearing. (Tr. 12.) Plaintiff appeared, was represented by counsel, and testified. (Tr. 12.) A vocational expert ("VE") also appeared and testified. (Tr. 12.) On July 16, 2010, the ALJ found Plaintiff not disabled. (Tr. 21.) On June 10, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On July 23, 2011, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On December 20, 2011, Plaintiff filed his Brief on the Merits. (Doc. No. 13-1.) On February 15, 2012, the Commissioner filed his Brief on the Merits. (Doc. No. 15.) Plaintiff did not file a Reply Brief.

Plaintiff asserts three assignments of error: (1) the ALJ improperly assessed the opinions of his treating physicians; (2) the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence; and (3) the ALJ improperly relied on the VE's testimony.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on March 26, 1956. (Tr. 20.) He had at least a high school education and was able to communicate in English. (Tr. 20.) He had past relevant work experience as a journeyman boilermaker. (Tr. 20.)

**B.    Medical Evidence**[1]

Plaintiff suffered both physical and mental impairments, but only Plaintiff's physical impairments relate to the disposition of his assignments of error; accordingly, the following summary of the medical evidence will regard only Plaintiff's physical impairments.

On January 21, 2004, Plaintiff fell 30 feet from scaffolding while at work. (Tr. 165, 203.) He suffered a right complex acetabular fracture with central femoral head dislocation; right femoral neck and pubic rami fractures; a closed head injury resulting in a small area of encephalomalacia in the right, front white matter with mild generalized atrophy of the brain; and extensive facial fractures. (Tr. 166, 585, 641.) He underwent open reduction and internal fixation surgery for his facial fractures (Tr. 210, 216), and a closed reduction of his dislocated left elbow (Tr. 220). Between February 5 and 17, 2004, Plaintiff underwent rehabilitation (Tr. 223); and on February 17, 2004, he was discharged to Orthopedic Services for left elbow surgery (Tr. 221). On March 5, 2004, he was discharged home in an improved condition. (Tr. 229.)

On March 4, 2005, Plaintiff presented to Dr. Brendan M. Patterson, M.D., for a follow-up on his right hip. (Tr. 527.) Dr. Patterson indicated the following. Plaintiff

---

[1] The Commissioner did not set forth Plaintiff's relevant medical history in his Brief on the Merits, but noted that such facts "are set forth in the ALJ's decision . . . and Plaintiff's brief." (Def.'s Br. 2 n.2.) The Court reminds the Commissioner that the Magistrate Judge's initial order in this case instructs that "Defendant's brief . . . shall cite, by exact and specific transcript page number, all relevant facts in a 'Facts' section," and "[a] full recitation of all relevant evidence should be presented." (Doc. No. 4.) The Commissioner has not been excused from complying with this order, and the Court expects the Commissioner to properly set forth all facts relevant to his arguments in future briefs unless otherwise instructed by Court order.

3

reported pain in the upper aspect of his right thigh that was aggravated by activity. (Tr. 527.) A x-ray revealed "some mile degenerative joint disease in the right hip." (Tr. 527.)

On November 30, 2005, Plaintiff presented to Dr. James Begley, M.D., "for late effects of multiple traumatic injuries." (Tr. 490-91.) Dr. Begley indicated the following. Plaintiff continued to have "difficulties" with his left hand and wrist weakness, although the problem was improving and Plaintiff continued to engage in occupational therapy. (Tr. 491.) Plaintiff also continued to suffer pelvic and right hip pain and exhibit restricted hip rotation. (Tr. 491.)

On January 9, 2006, Plaintiff presented to Dr. Patterson for a follow-up. (Tr. 246.) Dr. Patterson indicated the following. Radiographs revealed "some mild to moderate degenerative joint disease of the right hip." (Tr. 246.) Plaintiff exhibited "some motion loss in the right region which is considered to be permanent and is likely to progress as the osteoarthritic condition continues to evolve." (Tr. 246.)

On August 23, 2006, Plaintiff's vocational rehabilitation manager, Ms. Dawn Trapp, M.Ed., indicated that "Dr. Begley has determined that [Plaintiff's] return to work restriction is sedentary work." (Tr. 397, 454.) On August 2, 2007, Ms. Trapp indicated that Plaintiff "is limited to sedentary work." (Tr. 268.)

On August 7, 2007, Dr. Harry A. Hoyen, M.D.,[2] authored a medical source statement regarding Plaintiff's functional limitations and indicated, in part, the following. (Tr. 278.) Plaintiff could stand and walk for 6 and a half to 8 hours in an 8-hour

---

[2] The ALJ considered Dr. Hoyen to be a treating physician (Tr. 19), and neither party has taken issue with this designation.

4

workday; and sit for 5 and a half hours in an 8-hour workday. (Tr. 278.) He could occasionally lift between 11 and 20 pounds. (Tr. 278.) He could frequently bend and squat; occasionally climb, push, and pull; and never crawl; and he could reach above shoulder level. (Tr. 278.) Dr. Hoyen checked a box that indicated Plaintiff could perform simple grasping, pushing, and pulling on a "repetitive" basis, but could not perform "fine manipulation" on a "repetitive" basis. (*See* Tr. 278.)

On October 4, 2007, state agency reviewing physician Maria Congbalay, M.D., assessed Plaintiff's physical RFC as follows. (Tr. 297-304.) Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk for about 6 hours in an 8-hour workday with normal breaks. (Tr. 298.) He was limited in his abilities to push and pull. (Tr. 298.) He could never climb ladders, ropes, and scaffolds. (Tr. 299.) He could finger (i.e., perform fine manipulation) with his left hand frequently. (Tr. 300.) He had no visual, communicative, or environmental limitations. (Tr. 300-01.) On January 9, 2008, state agency reviewing physician Jon Starr, M.D., affirmed Dr. Congbalay's findings. (Tr. 681.)

On October 27, 2008, Plaintiff presented to Dr. Begley for a follow-up. (Tr. 688.) Dr. Begley indicated the following. Plaintiff was enrolled in a vocational training program, in which he was performing very well and getting "A's" in all of the classes. (Tr. 688.) Plaintiff reported that he was optimistic about employment opportunities upon completion of the training program. (Tr. 688.) Plaintiff also reported that he suffered an episode of right hip pain two months prior and that the pain resolved on its own after two weeks. (Tr. 688.) Plaintiff's last pelvic x-rays revealed the presence of post-traumatic degenerative changes in the right hip joint. (Tr. 688.) Dr. Begley discussed

with Plaintiff the possibility of the eventual need for a total hip arthoplasty on the right, but noted that Plaintiff was "nowhere near that stage" at that time. (Tr. 689.)

### C. Hearing Testimony

#### 1. Plaintiff's Testimony

Plaintiff testified at his hearing as follows. He lived by himself in an apartment. (Tr. 30.) He lived on the second floor (Tr. 31), and there was no elevator in his apartment building (Tr. 32). He drove himself approximately 35 miles to his hearing. (Tr. 30.) He "hardly ever cook[ed]" his meals because he was "not so good at that standing thing and being about washing dishes," as it "becomes a major chore." (Tr. 30.) He could do his laundry, take out the trash, go shopping, and manage his personal grooming and hygiene. (Tr. 31-32.) He could vacuum, but often times it caused him pain. (Tr. 31.) He often tried to go outdoors and fish. (Tr. 33.)

Plaintiff could stand for approximately one hour before he needed to sit; and he was "alright with walking a little bit." (Tr. 43.) His right hip made sitting difficult. (Tr. 40.) His right hip pain was made worse by exposure to cold (Tr. 41), and was alleviated by hot baths and heating pads (Tr. 41).

Plaintiff had difficulty using his dominant left hand. (Tr. 32, 45.) He believed his right arm was "pretty good," but he could lift only 10 pounds with his left. (Tr. 42-43.) He experienced numbness in a large portion of his left hand. (Tr. 39.) He could grip items with it, but he lacked strength and was afraid he would drop things. (Tr. 45.) He also had difficulty buttoning his shirt (Tr. 46.)

#### 2. The VE's Testimony

> The ALJ posed the following hypothetical to the VE:
>
> Assume that we had a person of the same age, education and employment background as [Plaintiff]. This person is able to lift 20 pounds occasionally, 10 pounds frequently. This person could stand and walk for six hours, sit for six. This person can occasionally climb stairs and ramps; push/pull is occasional. We're going to say that this person can . . . bend and balance and squat . . . . This person can reach in all directions, however, when reaching overhead, they're[sic] reaching with their [sic] non-dominant hand. This person is handling, fingering and feeling with their [sic] non-dominant hand. We're not going to expose this person to any hazardous conditions. This person is performing simple, routine tasks with simple, short instructions and simple work related decisions with key workplace changes.

(Tr. 49-50.) The VE testified that such a person could not perform Plaintiff's past relevant work. (Tr. 50.) He continued that the Dictionary of Occupational Titles ("DOT") did not address "the reaching and feeling with the non-dominant hand." (Tr. 50.) Nevertheless, the VE testified that such a person could perform other work as a sales attendant (for which there were 3.5 million jobs in the national economy and 150,00 jobs in Ohio), mail clerk (for which there were 100,000 jobs in the national economy and 6,000 jobs in Ohio), and routing clerk (for which there were 500,000 jobs in the national economy and 37,000 jobs in Ohio). (Tr. 51.)

The VE verified that his testimony was consistent with the DOT except regarding the limitations on reaching and feeling with the non-dominant hand; and that his testimony regarding those limitations was based on his professional experience. (Tr. 51.)

Upon Plaintiff's counsel's questioning, the VE stated that his testimony was based on the understanding that the hypothetical person could lift 20 pounds occasionally and 10 pounds frequently with his *dominant* hand and could use his non-dominant hand only to help. (Tr. 52-53.) The ALJ clarified that the hypothetical person

7

could handle, finger, and feel with the non-dominant hand; that the dominant hand was restricted and could be used only to assist tasks performed by the non-dominant hand; and that the dominant hand could not be used by itself to perform tasks. (Tr. 54.) The VE stated that, according to the DOT, the "non-dominant hand should be able to handle the job." (Tr. 54-55.)

Counsel thereafter asked the VE, in light of the ALJ's clarification, how his testimony would change based on his professional experience. (Tr. 56.) The VE responded that he would find it more difficult to "place" such a person whose dominant hand was so restricted. (Tr. 56.)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant

must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

      The Social Security Administration may terminate benefits if it finds that the claimant's disability has ceased. 42 U.S.C. §§ 423(f) and 1382c(a)(4). Evaluation of whether a claimant's disability has ceased is made on a neutral basis with no presumption that disability has continued. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). The implementing regulations prescribe an eight-step sequential analysis for continuing disability reviews. 20 C.F.R. §§ 404.1594(f) and 416.994(b)(5).[3]

---

[3] The eight step sequential process, generally, is as follows. (1) If the beneficiary is working, he is no longer disabled. (2) If a beneficiary is not working and his impairments meet or equal the Listings, disability is continued. (3) If the beneficiary's impairments do not meet or equal the Listings, and there

### IV.     SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act as of January 21, 2004, the date the claimant became disabled.

2. The claimant has not engaged in substantial gainful activity since January 21, 2004, the alleged onset date.

3. At all times relevant to this decision, the claimant has had the following severe impairments:  traumatic brain injury; post-traumatic stress disorder; degenerative joint disease of the right hip; and left ulnar atrophy status post closed dislocation of the left elbow.

4. From January 21, 2004 through August 20, 2007, the period during which the claimant was disabled, the severity of the claimant's brain injury met the criteria of section 12.02 of 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant was under a disability, as defined by the Social Security Act, from January 21, 2004 through August 20, 2007.

6. Medical improvement occurred as of August 21, 2007, the date the claimant's disability ended.

---

has been medical improvement, the sequential analysis proceeds to step four; and if there has not been medical improvement, the analysis proceeds to step five.  (4) If the medical improvement is related to the beneficiary's ability to work, the sequential analysis proceeds to step six; if not, it proceeds to step five.  (5) If there is no medical improvement, or if the medical improvement is not related to the beneficiary's ability to work, and one of the exceptions to medical improvement apply, the beneficiary is no longer disabled.  If none of the exceptions apply, the sequential analysis continues.  (6) If medical improvement is related to the ability to work, and all current impairments are not severe, the beneficiary is no longer disabled.  (7) If the impairments are severe, the Commissioner determines the beneficiary's RFC and considers whether he can do his past work.  If the beneficiary can, he is no longer disabled.  (8) If the beneficiary cannot do his past work, the Commissioner decides whether he can do other work given his RFC, age, education, and work experience.  If the beneficiary can, he is no longer disabled; if not, disability is continued.  *See* 20 C.F.R. §§ 404.1594(f) *and* 416.994(b)(5); *Johnson v. Sec'y of Health & Human Servs.,* 948 F.2d 989, 991 (6th Cir. 1991).

7. Beginning on August 21, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

8. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals a listing.

9. After careful consideration of the entire record, the undersigned finds that, beginning on August 21, 2007, the claimant has had the residual functional capacity to perform a range of light work . . . . Specifically, he can lift and carry 20 pounds occasionally and ten pounds frequently.  He can push and pull occasionally.  He can sit for six hours and stand and/or walk for six hours in a normal workday.  He can occasionally climb ramps and stairs.  He can bend, balance, and squat.  He can reach in front and overhead with the non-dominant hand.  He can handle, finger, and feel with the non-dominant hand. He is precluded from work around hazardous conditions. He is limited to simple, routine tasks that involve only simple, short instructions.

10. Beginning on August 21, 2007, the claimant has been unable to perform past relevant work.

. . . . .

13. Beginning on August 21, 2007, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

14. Beginning on August 21, 2007, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy.

15. The claimant's disability ended on August 21, 2007.

(Tr. 15-21.)

## V. LAW & ANALYSIS

**A.    Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. The ALJ's Assessment of Plaintiff's Treating Physicians

The ALJ gave "great weight" to Dr. Hoyen's opinions. Plaintiff contends that the ALJ's disability determination is, therefore, inconsistent because Dr. Hoyen actually opined Plaintiff could not perform fine manipulation with his dominant left hand. (Pl.'s

Br. 11.)  Plaintiff's reading Dr. Hoyen's opinion needs some clarification: Dr. Hoyen did not opine that Plaintiff was unable to perform fine manipulation with his dominant left hand; rather, Dr. Hoyen checked a box on his medical source statement that indicated Plaintiff could not perform "fine manipulation" on a "repetitive" basis.  (*See* Tr. 278.) The ALJ's findings and RFC determination are not inconsistent with this opinion. Accordingly, this assignment of error is not well taken.

Plaintiff also contends that the ALJ "failed to . . . mention the multiple times in the record where Dr. [Begley] stated that [Plaintiff] is limited to sedentary work."  (Pl.'s Br. 9.)  The evidence to which Plaintiff cites, however, does not consist of Dr. Begley's treatment notes; rather, the evidence consists of Ms. Trapp's vocational therapy notes dated August 2006 and 2007, wherein Ms. Trapp states that Dr. Begley said Plaintiff was restricted to sedentary work.  (*See* Tr. 268, 397, 454.)  Plaintiff has not cited to any treatment records or medical source statements from *Dr. Begley* that indicate Dr. Begley restricted Plaintiff to sedentary work at any time.  Ms. Trapp's second-hand summary of Dr. Begley's alleged opinion, alone, is insufficient to establish that opinion. The Court will not cull through the record and speculate on which portion of the record a party relies; indeed, the Court is not obligated to wade through and search the entire record for some specific facts that might support a party's claims.  *See Centerior Serv. Co. v. ACME Scrap Iron & Metal,* 104 F. Supp.2d 729, 735 (N.D. Ohio 2000) (Gaughan, J.) (*citing InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).  In other words, Plaintiff has presented an insufficient basis to conclude that Dr. Begley opined Plaintiff was limited to sedentary work and, therefore, that the ALJ should have

13

discussed that opinion.

Further, even if the Court assumes Ms. Trapp's notes confirm that Dr. Begley opined Plaintiff was limited to sedentary work, that opinion relates only to Plaintiff's condition before August 21, 2007.  The ALJ determined that Plaintiff was disabled from January 21, 2004, through August 20, 2007.  Any failure to discuss the opinion would be harmless error.  See *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("There is . . . the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant.").[4]  Accordingly, this assignment of error also is not well taken.

### C. The ALJ's RFC Assessment

Plaintiff contends that the ALJ erroneously failed to include in his RFC determination Plaintiff's inability to use his dominant left hand for fine manipulation. This contention lacks merit because the evidence does not show that Plaintiff *could not* use his dominant left hand for fine manipulation.  Again, Dr. Hoyen only checked a box on his medical source statement that indicated Plaintiff could not perform fine manipulation *on a repetitive basis*.  Further, Dr. Congbalay indicated that Plaintiff could perform fine manipulation with his left hand frequently.

---

[4] To the extent Ms. Trapp's second-hand account of Dr. Begley's alleged opinion is construed to support a limitation to sedentary work after August 21, 2007, Dr. Begley's opinion is so patently deficient that the Commissioner could not possibly credit it, as the opinion is wholly unsupported by any treatment notes and objective signs or findings.  See *Wilson*, 378 F.3d at 544, 547.

14

Plaintiff also contends that the ALJ erroneously failed to include in his RFC determination any limitations related to Plaintiff's right hip. But Plaintiff cites no evidence showing limitations caused by Plaintiff's right hip that was not considered by the ALJ. The ALJ found that Plaintiff's degenerative joint disease in the right hip was a "severe" impairment (Tr. 15) and noted Plaintiff's allegations of pain (Tr. 18). However, the ALJ found that Plaintiff exhibited "no problems with sitting, standing, or walking" during a face-to-face interview with a Social Security Administration representative in 2007; Plaintiff's daily activities belied the extent to which Plaintiff alleged he was limited by his impairments; the records of Plaintiff's vocational rehabilitation were "strong evidence" that Plaintiff could perform light work; Dr. Hoyen opined that Plaintiff could sit, stand, and walk for up to 8 hours; and Dr. Congbalay opined that Plaintiff could sit, stand, and walk for about 6 hours in an 8-hour workday. (Tr. 18-19.) Plaintiff has not taken issue with these findings.

In short, substantial evidence supports the ALJ's RFC determination, and this assignment of error is not well taken.

### D.     The ALJ's Reliance on the VE's Testimony

The ALJ explained that she relied on the VE's testimony to determine Plaintiff could perform other work in the national economy because the testimony was based on the VE's professional experience, was generally consistent with the DOT, was based on sources of data that are considered reliable even when they are not consistent with the DOT, and was not contradicted. (Tr. 21.) Plaintiff contends that the ALJ improperly relied on the VE's testimony because the VE's testimony was "convoluted." (Pl.'s Br. 16.) The Court disagrees that the VE's testimony was "convoluted." Although the VE

expressed that he initially misunderstood the ALJ's hypothetical as it related to which of the hypothetical person's hands was restricted, and Plaintiff's counsel and the VE appeared to confuse each other in their attempt to resolve any misunderstanding, the record reflects that the VE's ultimate opinion was sufficiently clear:  the VE stated that, according to the DOT, a person whose dominant had was restricted and who primarily used his non-dominant hand "should be able to handle" the jobs to which he testified, although the VE personally would find it difficult to "place" such a person.  Plaintiff's counsel did not thereafter seek further clarification of the VE's testimony; and Plaintiff fails to explain how this testimony is an inadequate basis for the ALJ's determination.  Accordingly, this assignment of error is not well taken.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date: June 5, 2012